**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **S.P. and K.P.**

**No. 21-0746** (Mercer County 19-JA-93 and 19-JA-94)

**MEMORANDUM DECISION**

Petitioner Mother C.A., by counsel P. Michael Magann, appeals the Circuit Court of Mercer County's August 20, 2021, order terminating her custodial rights to S.P. and K.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and James Wegman, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joshua J. Lawson, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her custodial rights instead of granting her a post-dispositional improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2019, the DHHR filed a child abuse and neglect petition against petitioner alleging that she abused drugs, failed to seek treatment for her mental health issues, and failed to provide for the children, S.P. and K.P.[2] The children underwent forensic interviews, and both children reported physical, emotional, and substance abuse by petitioner. Petitioner participated in services but continued to test positive for marijuana. The DHHR further alleged that petitioner had an extensive Child Protective Services ("CPS") history dating back to 2015.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Of note, petitioner has two younger children who were also involved during the proceedings below. However, those children are not at issue in this appeal.

Later in August of 2019, the DHHR filed an amended petition with additional allegations of abuse. Specifically, the DHHR alleged that, during her forensic interview, then-fourteen-year-old K.P. reported that petitioner always placed the men in her life above her children and took her frustrations out on her children by yelling at them daily for no reason. K.P. further disclosed physical abuse, including the allegations that petitioner had previously punched and hit her head, legs, and arms and had attempted to strangle S.P. According to K.P., petitioner also abused marijuana and sold her prescribed medication. In her interview, then-thirteen-year-old S.P. reported that "any chance [petitioner] got she would beat" them and that petitioner previously threw a glass figurine at her head. S.P. also disclosed that petitioner sold drugs with the children present. Both children stated that they did not want to be returned to petitioner's care. Petitioner waived her preliminary hearing

The circuit court granted petitioner a preadjudicatory improvement period in February of 2020. As part of the terms and conditions, petitioner was required to maintain stable housing and employment, cooperate with services, and address and maintain her mental health needs. At the conclusion of her preadjudicatory improvement period in September of 2020, the circuit court adjudicated petitioner as a neglecting parent and granted her a post-adjudicatory improvement period.

Prior to disposition, the guardian filed a report recommending that petitioner's custodial rights to the children be terminated. The guardian reported that petitioner failed to take her mental health issues seriously and did not seek treatment or medication management for the same. According to the guardian, petitioner continuously placed all blame on the children and failed to accept any responsibility for her own actions. The guardian noted that petitioner "has made every [multidisciplinary team meeting] about what the children have done wrong and why she believes she can correct these issues and has continued to refuse to address any shortcomings of her own, particularly those related to [m]ental [h]ealth [t]reatment." The guardian further noted that the children refused to visit with petitioner, and the children's therapist recommended that visits with petitioner cease until the children were ready for further contact to continue. Despite this recommendation, petitioner continued to contact the children via phone and social media, which caused the children distress. The guardian reported that service providers attempted to address these issues with petitioner, but she refused to recognize the validity or need for the no contact requests. The guardian concluded that the relationship between petitioner and the children was irreparable.

In August of 2021, the circuit court held a dispositional hearing. The DHHR presented the testimony of several witnesses in support of its motion to terminate petitioner's parental rights, including a CPS worker who stated that petitioner failed to address her mental health concerns. The worker testified that petitioner underwent a psychological evaluation and was diagnosed with bipolar disorder and a personality disorder but was seeking treatment for social anxiety only. The worker further advised that petitioner had not submitted to a drug screen since September of 2020, failed to accept responsibility for any of the issues that led to the petition's filing, blamed the children for her troubles, and contacted the children against the therapist's recommendation.

A service provider testified that she provided parenting and adult life skills classes to petitioner, and that petitioner satisfactorily complied with the services. However, the service

provider acknowledged that petitioner continued to contact the children against their wishes and their therapist's recommendations, and that petitioner indicated that she was going to continue to contact the children unless she had a court order instructing her not to do so. Nevertheless, the service provider believed that, with further counseling, the children could eventually be returned to petitioner's care. The service provider testified that petitioner did not submit to drug screens for some time because that service had expired, and she further indicated that she did not suspect that petitioner was abusing drugs.

A service provider for the children also testified, stating that she provided "wrap around facilitation" and "work[ed] with them to make sure that their mental health is good in the home and that they are stable in the environment that they are in." The service provider testified that the children no longer had a relationship with petitioner and had no desire to continue a relationship with petitioner. The provider stated that she initially encouraged the children to maintain a relationship with petitioner, but that their contact with petitioner had been detrimental to the children's mental health. The provider recounted one message sent by petitioner to K.P. wherein she told the child, "Remember, I'm no longer your mother. I'm [petitioner's first name]. Use a condom because . . . I ain't raising none of them grandbabies."[3] Petitioner further wrote to K.P., "I cannot believe I raised such a disrespectful, lying, manipulative little s--t. And yes, that's the way I'm talking to you right now because that's exactly what you're acting like." The provider stated that petitioner was also provided phone calls with the children but refused to follow the phone call schedule provided, calling the foster mother more than sixty-five times in one month. The provider testified that she attended MDT meetings and had never observed petitioner to take responsibility for her actions. When asked whether there was anything else that could be done to repair the relationship between petitioner and the children, the provider stated "I feel like we have exhausted all resources. For two years we have done everything possible. I don't know what else we could do."

The children's therapist testified that therapy was going well and that "it's a night and day difference" from when she first started seeing the children. The therapist diagnosed the children with posttraumatic stress disorder and stated that the children experienced trauma at the hands of petitioner, including physical and mental abuse. The therapist stated that the children refused to visit with petitioner during the proceedings due to petitioner's abuse and actions during the proceedings. The therapist opined that "if visitation is pushed in any capacity for the [children], we're going to see some pretty big behaviors. I think they're going to regress immensely." The therapist further opined that the relationship could not be fixed in the near future.

Child K.P. testified that, prior to the initiation of the proceedings, petitioner became very aggressive with her. K.P. reported being scared to come home from school for fear of what kind of mood petitioner would be in that day. K.P. testified that petitioner hit her, called her names, and abused marijuana in her presence. K.P. opined that her relationship with petitioner could not be repaired because petitioner "can't even take responsibility for what she did to us." K.P. stated, "I also want her [petitioner] to know that if it wasn't for her I wouldn't be suffering with PTSD every day of my life, and anxiety and depression."

---

[3]Neither child has any children.

Child S.P. also testified, stating that prior to the petition's filing, petitioner beat her. S.P. stated, "I know the difference between whoopings and like spankings, but it wasn't that." S.P. stated that petitioner would punch them or throw things at them. S.P. testified that she did not want to see petitioner until she changed her behavior and did not believe there was any possibility of rekindling her relationship with petitioner in the future.

Petitioner's therapist testified that petitioner was compliant with her treatment. However, on cross-examination, the therapist admitted that the allegations of abuse were never communicated to him and that petitioner characterized the proceedings as a custody dispute.

Petitioner testified that addressing her mental health concerns was a part of her improvement period and that she began counseling in February or March of 2021. Petitioner testified that when visits with the children were provided, they went well, and she requested family counseling. She admitted that she had not submitted to a drug screen since December of 2020 but claimed that the DHHR referral for that service had expired. When asked whether she had said anything inappropriate to the children during the proceedings, petitioner stated "I guess I have because they've said it." However, petitioner claimed she was only trying to communicate how much she loved her children. Petitioner testified that she tried to give the children the space they desired during the proceedings stating, "I did that for this whole time," and denied that she ever contacted the children on social media. Petitioner also denied calling the foster parent more than sixty-five times in one month. When asked why the petition was filed against her, petitioner claimed that the children were mad at her. She denied calling them names or beating them.

Following testimony, the DHHR requested that the circuit court terminate petitioner's parental rights. The guardian, however, requested that only her custodial rights be terminated as he believed the children would eventually want to resume their relationship with her, despite their testimony to the contrary. Ultimately, the circuit court terminated petitioner's custodial rights to the children. The circuit court found that petitioner "has no credibility with me." The circuit court found that petitioner had severe mental health issues that affected her ability to parent the children and that there had been too much trauma inflicted on the children to place them back in her care. Petitioner now appeals the August 20, 2021, dispositional order terminating her custodial rights.[4]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there

---

[4]K.P.'s father's parental and/or custodial rights were previously terminated or relinquished. S.P.'s father's parental rights remain intact. The permanency plan for K.P. and S.P. is guardianship by their foster family. Further, based upon the recommendation of the DHHR and the guardian, the circuit court granted petitioner a post-dispositional improvement period with regard to the two younger children who are not at issue on appeal.

is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her custodial rights without first granting her a post-dispositional improvement period. According to petitioner, testimony established that she was compliant with parenting and adult life skills classes and demonstrated her understanding of the materials taught. Further, petitioner obtained housing and employment, and the DHHR and the guardian recommended that the two younger children continue in her home during a post-dispositional improvement period. Petitioner also obtained counseling to address her mental health issues. By terminating her custodial rights, petitioner argues that the circuit court failed to consider family counseling and that reunification with K.P. and S.P. was a possibility.

We find petitioner's arguments to be without merit. Petitioner failed to demonstrate that she was entitled to a post-dispositional improvement period. West Virginia Code § 49-4-610(3)(D) provides that a circuit court may grant a parent a post-dispositional improvement period after the expiration of a previous improvement period when the parent shows that she "experienced a substantial change in circumstances" and that due to the change in circumstances, she was likely to fully participate in another improvement period. It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Here, petitioner provides no argument as to what substantial change in circumstances she experienced. Further, petitioner failed to demonstrate that she was likely to fully participate in another improvement period. Although petitioner eventually obtained counseling, a letter authored by her therapist indicated her treatment was targeting a social anxiety disorder rather than her diagnoses of bipolar disorder and a personality disorder. Further, her therapist testified at the dispositional hearing that petitioner had not provided him with the allegations of abuse and characterized the proceedings as a custody battle. Moreover, petitioner failed to accept responsibility for her actions. Both children testified that petitioner was physically abusive and beat them; petitioner, however, continued to deny such actions during her testimony at the dispositional hearing. Both children also testified that petitioner called them names, which petitioner also denied, despite evidence that petitioner called K.P. "a manipulative little s--t." To the extent petitioner argues that the circuit court erred in denying her a post-dispositional improvement period with regard to K.P. and S.P. when she was granted one with regard to her two younger children, testimony established that continued contact with K.P. and S.P. was not in their best interests and would be detrimental to their mental health. Accordingly, we find no error in the circuit court's decision to deny petitioner a post-dispositional improvement period.

We likewise find no error in the circuit court's termination of petitioner's custodial rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on her own or with help. Specifically, petitioner failed to adequately address her mental health issues and failed to acknowledge the conditions of abuse and neglect. The record establishes that petitioner did not seek counseling until March of 2021, well over a year into the proceedings. Petitioner exhibited extreme behavior towards the children during the proceedings, including calling them names and sending them hurtful messages. The children testified about the trauma inflicted by petitioner, and both indicated that they wanted no further relationship with petitioner due to her failure to accept responsibility for her actions. We have previously explained that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). The record clearly establishes that petitioner blamed the children for the proceedings, attempted to harass them by sending them messages and calling them against the DHHR's directive and therapist's recommendation, and denied being physically or mentally abusive to the children. The children testified that petitioner was aggressive towards them, beat them, and threw objects at them, but petitioner denied being physically violent or hitting the children. Petitioner also denied harassing the children and denied calling the foster mother over sixty-five times in one month, despite evidence to the contrary.

Moreover, the children's service provider and their therapist testified that continued contact between petitioner and the children was not in the children's best interests. Their therapist testified that the children would "regress immensely" in their treatment if contact were forced, and the service provider testified that "we have exhausted all resources" with regards to petitioner's services. While petitioner argues that she should have been granted a less-restrictive dispositional alternative, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be

substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The evidence set forth above demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her custodial rights was necessary for the children's welfare. Consequently, we find no error in the circuit court's decision to terminate petitioner's custodial rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 20, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: March 9, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment

7